JOE SHAW, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error*.

### En Banc.

### Opinion Filed November 8, 1924.

When the indictment sufficiently alleges the statutory offense of manslaughter by culpable negligence in driving and operating an automobile in a dangerous, reckless, careless and negligent manner, and the evidence sustains a verdict of guilt, the judgment of conviction and sentence rendered on the verdict will be affirmed, no material or harmful errors of law or procedure appearing in the record.

A Writ of Error to the Circuit Court for Jackson County, Amos Lewis, Judge.

Affirmed.

*Thomas E. Walker*, for Plaintiff in Error;

*Rivers Buford*, Attorney General, and *Marvin C. McIntosh*, Assistant for the State.

PER CURIAM.—Writ of Error was taken to a judgment of conviction for manslaughter.

The indictment contains an allegation that Joe Shaw "did unlawfully, feloniously, by his act, procurement and culpable negligence, and from and with a reckless disregard for the life and safety of one Wade Armstrong a human being did then and there kill the said Wade Armstrong by running against and striking the said Wade Armstrong with a certain automobile which he the said Joe Shaw was then and there driving and operating in a dangerous reckless, careless and negligent manner."

The statute provides that "The killing of a human being

by the act, procurement or culpable negligence of another, in cases where such killing shall not be justifiable or excusable homicide nor murder, according to the provisions of this article, shall be deemed manslaughter." Sec. 5039 Rev. Gen. Stats. 1920.

"No person shall operate a motor vehicle on the public highways of this State recklessly or at a rate of speed greater than is reasonable and proper, having regard to the width, traffic and use of the highway, or so as to endanger the property or the life or limb of any person." Sec. 1023 Rev. Gen. Stats. 1920.

The defendant testified that he was driving south on the road and saw the deceased "on the right hand side" "something like 150 or maybe 175 yards away" on a straight road twenty-five or thirty feet wide and that when "I got in about fifty yards of him I blowed, but he didn't pay no mind, he just stayed where he was, and I went on, and I got in about twenty yards of him and blowed again, and he didn't pay no mind and I went on and turned to my left, and when I got in about something like five or six feet of him he looked like he 'yarned' something—he heard something—he turned his head to the right and run right across the road to the left in front of my car and I was so close to him I couldn't keep it off of him." "The right hand fender of the car struck him—the right hand wheel next to him struck him." "I was making eight or ten miles an hour. It was a pretty good road. I was just going a common gait." The deceased was deaf but the defendant testified that he did not know it.

There is testimony that the car was "going about 25 or 30 miles an hour" and that when the car struck the deceased it "carried him thirteen steps" and that the car ran thirty-four steps before stopping. Two witnesses

testified that the blowing of the horn and the collision were practically simultaneous.

The above stated and other testimony clearly indicate that the defendant knew of the presence of the deceased on the right hand side of the road, that the car was running quite rapidly, and that he had ample time in which to have his car under control before reaching the place where the deceased was walking with his back to the defendant. As the deceased did not notice the blowing of the car horn as stated by the defendant, there was the more reason for a reduction of speed and for full control of the car as it approached the deceased. It is manifest from the defendant's own testimony that he did not exercise the care the law required of him under the circumstances; and the other testimony clearly shows that the manner in which the deceased was struck and fatally injured was the result of the defendant's recklessness, or failure to so operate the car on the public highway as not to endanger the life or limb of those lawfully on the public road, in violation of Section 1023 Revised General Statutes, 1920.

The evidence is legally sufficient to support a finding that the deceased was killed by the act or culpable negligence of the defendant within the statutory definition of manslaughter. The indictment sufficiently alleges the statutory offense and no material or harmful errors of law or of procedure appear. Hobbs v. State, 83 Fla. 480, 91 South. Rep. 555; Meier v. State, 87 Fla. 133, 99 South. Rep. 124; Denmark v. State, decided at this term.

Affirmed.

TAYLOR, C. J., AND WHITFIELD, ELLIS, BROWNE, WEST AND TERRELL, J. J., concur.